```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ABUBAKAR O. ALAUSA and
AMINAT Y. ALAUSA,¹

                        Plaintiffs,            MEMORANDUM & ORDER
                                                22-CV-3814 (PKC) (LB)
        - against -

MONTEREY FINANCIAL SERVICES, LLC,

                        Defendant.
---------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

*Pro se* Plaintiffs Abubakar O. Alausa and Aminat Y. Alausa (collectively "Plaintiffs") commenced two actions against Defendant Monterey Financial Services, LLC ("Defendant"), for violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), and the Truth in Lending Act ("TILA"). Plaintiffs' various claims are based upon Defendant's debt collection efforts on a balance due from a timeshare membership program. Defendant's motion to dismiss this consolidated case is currently before the Court. For the reasons that follow, Defendant's motion to dismiss is granted in part and denied in part. This action will proceed on Plaintiffs' claim under Section 1692g of the FDCPA.

---

[1] Initially, Plaintiffs Abubakar O. Alausa and Aminat Y. Alausa, husband and wife, filed separate actions alleging identical claims. The parallel action filed by Aminat Y. Alausa—*Aminat Y. Alausa v. Monterey Financial Services, LLC*, No. 22-CV-3819 (PKC) (LB)—was consolidated with the present action. (*See* 11/8/2022 Docket Order.)

1

## BACKROUND[2]

In December 2016, Plaintiffs were on vacation in Cancun, Mexico and signed a timeshare contract with the Villa Group.[3] (Am. Compl., Dkt. 7, ¶¶ 7, 8.) The day after signing this contract, Plaintiffs spoke with a representative of the Villa Group to cancel the timeshare membership, which they were told they could do up to seven days after the initial signing. (*Id.* ¶ 9.) Less than six months later, in April 2017, Plaintiffs noticed charges from the Villa Group on their credit card statements and called the timeshare company again to cancel the contract. (*Id.* ¶ 10.)

Defendant entered the picture in October 2018, when Plaintiffs "discovered a joint collections account" balance due on their credit card statements reported by "M[onterey] C[ollection] SV for Club Caribe Villa del Pal-mar." (*Id.* ¶ 12.) Upon making this discovery, Plaintiffs sent a notarized, signed letter to Defendant requesting "Validation of Debt / Claim" and invoking 15 U.S.C. § 1692g. (Dkt. 14, Ex. B, ECF 11.)[4] Two days later, on October 12, 2018, Defendant sent a letter confirming receipt of Plaintiffs' October 10, 2018 request and stated that Defendant would submit "a request to remove all derogatory marks against your credit in our system." (Dkt. 7, ¶ 27 (citing Ex. C); *id.* at ECF 12 (Ex. C).) The letter stated that it might take up to six weeks for the credit bureaus to reflect the same information. (*Id.*) Plaintiffs then initiated direct disputes with the various credit reporting agencies by letters dated November 9, 2018,

---

[2] The Court accepts as true all factual allegations in the Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true[.]") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[3] Plaintiffs signed the contract "under duress" due to the salespeople pitching them on the timeshare the "whole day" and after offering them "endless alcohol," which made Plaintiffs "hungry and intoxicated." (Dkt. 7, ¶ 8.)

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

stating that "I have written a letter for prove [sic] of Validity to the Collections agency and they [f]ailed to provide any such proof for the [alleged debt].  However, they sent me a letter that they [will remove] the account from my credit [r]eport in about six weeks from October 12, 2018." (Dkt. 7, at ECF 13–15 (Exs. D–F) (emphases omitted).)[5]  Despite this interaction with Defendant and Plaintiffs' claim that the debt is fraudulent, the debt continued to be included on Plaintiffs' credit reports.  (*Id*. ¶¶ 28–31.)

Approximately two years later, on November 11, 2020, Plaintiffs sent a certified letter to Defendant requesting a re-investigation of the debt on Plaintiffs' credit report.  (*Id*. ¶ 32.)  As of the filing of this action, the debt continued to be included on Plaintiffs' credit reports.  (*Id*. ¶ 13.)

Because of Defendant's continued reporting of this debt, Plaintiffs have suffered adverse consequences, including needing to pay higher car insurance premiums, life insurance rates, mortgage rates, and student loan rates.  (Dkt. 14, at ECF 7.)

## PROCEDURAL HISTORY

On February 15, 2022, and March 7, 2022, Plaintiffs, acting *pro se*, each filed a lawsuit in Civil Court of the City of New York, Queens County.  Their operative complaints stated nothing more than "Damage caused to person for $50,000.00 with interest from 08/15/2018." (Dkt. 1-1.) Defendant moved to dismiss both actions in state court.  In response, Plaintiffs filed affidavits to ground Plaintiffs' claims in several federal consumer statutes—namely, the FDCPA, FCRA, and TILA.  At that point, Defendant removed both actions to this Court, pursuant to 28 U.S.C. § 1441(a), invoking this Court's federal question subject matter jurisdiction.  (Dkt. 1, at ¶ 6.)  On July 20, 2022, the Court provided Plaintiffs with the opportunity to file an amended complaint

---

[5] These letters were signed by Plaintiff Abubakar Alausa and are notarized.

3

with a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). (7/20/2022 Docket Order.) On September 21, 2022, Plaintiffs filed the Amended Complaint (Dkt. 7), and on December 28, 2022, Defendant moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiffs failed to sufficiently plead their case under Federal Rule of Civil Procedure 8(a)(2) and failed to state claims under the invoked federal statutes. (Dkt. 15, at 5; *see generally* Dkt. 15.)

## STANDARD OF REVIEW

**I.   Motion to Dismiss**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). While detailed factual allegations are not required, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

A complaint filed by a *pro se* plaintiff is construed liberally and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "a complaint's allegations must . . . at least 'permit the court to infer more than the mere possibility of misconduct.'" *Richardson v. City of New York*, No. 17-CV-9447, 2019 WL 1512646, at *2 (S.D.N.Y. Apr. 8, 2019) (quoting *Iqbal*, 556 U.S. at 679). Additionally, while the Court must accept as true a complaint's factual allegations at the motion to dismiss phase, it need not accept legal conclusions as true. *See*

*Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013) ("[W]e are not required to credit conclusory allegations or legal conclusions couched as factual allegations.").

## II.   Consideration of Extrinsic Materials

In connection with their opposition to Defendant's motion to dismiss, Plaintiffs have appended additional documents that were not attached to their Amended Complaint.[6] (*See* Pl. Opp'n, Dkt. 14.)  Specifically, Plaintiffs include a letter dated November 11, 2020 disputing a $9,594 balance due to "Club Caribe Villa Del Palmer,"[7] and an April 30, 2022 predatory lending complaint addressed to the Federal Trade Commission.  (Dkt. 14, ECF 17–18 (Exs. G, H).)[8] Ordinarily, a court should not consider extra-pleading materials on a motion to dismiss unless those materials were incorporated by reference into, or are otherwise deemed "integral" to, the challenged pleading.  *See, e.g.*, *Nicosia v. Amazon.com*, 834 F.3d 220, 234 (2d Cir. 2016) (extrinsic materials that plaintiff cited throughout the pleadings were "integral" to and incorporated by reference into the complaint and thus were properly considered on a Rule 12(b)(6) motion; however, lower court erred in considering facts that were neither alleged in nor integral to the complaint); *see also Ansonia Tenants' Coal., Inc. v. Ansonia Assocs.*, 163 F.R.D. 468, 470

---

[6] Plaintiffs also include a new cause of action in their opposition brief under New York's General Business Law Article 22-A, which the Court does not address, as these claims did not appear in the Amended Complaint. (Dkt. 14, at ECF 2).  *See In re IAC/InterActiveCorp Sec. Litig.*, 695 F. Supp. 2d 109, 124 (S.D.N.Y. 2010) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs." (quotation omitted)).

[7] While it is unclear on the face of the November 2020 letter to whom it was addressed (*see* Dkt. 14, at ECF 17), Plaintiffs state in their opposition that it was sent to Defendant (Dkt. 14, ECF 4).

[8] Defendant has not sought to convert its motion to dismiss into one for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), nor does the Court find that it would be appropriate to do so.  *See generally Sahu v. Union Carbide Corp.*, 548 F.3d 59, 69 (2d Cir. 2008) (holding that a motion to dismiss should not be converted into a motion for summary judgment if the movant's motion papers can be fairly read to seek dismissal under Rule 12(b)(6) and thus provided non-movant insufficient notice of conversion).

5

(S.D.N.Y. 1995) (collecting cases in which consideration of extrinsic materials from state court proceedings was not, by itself, sufficient to trigger conversion to summary judgment motion).

Because Plaintiffs reference the November 2020 letter in their Amended Complaint (*see* Dkt. 7, ¶ 32), the Court finds that it is integral to the Amended Complaint and considers it in connection with Plaintiffs' opposition to the instant motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002))); *id.* ("Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint[.]" (internal quotation marks and citations omitted)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991) (permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint). The Court, however, will not consider the April 2022 FTC "Predatory Lending Complaint," as that document was not incorporated by reference into the Amended Complaint and is not otherwise integral to it.

## DISCUSSION

Defendant moves to dismiss Plaintiffs' Amended Complaint on the basis that it fails to plausibly allege violations of the FDCPA, FCRA, and TILA, and thus fails to satisfy the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6). (Dkt. 15, at 5–7.) The Court agrees with Defendant as to all claims except Plaintiffs' FDCPA claim under 15 U.S.C. § 1692g.

## I. Plaintiffs' TILA Claims

Plaintiffs allege that Defendant violated 15 U.S.C. § 1631, which requires that creditors disclose certain information regarding a consumer credit transaction to the person who is obligated on that consumer credit. *See* 15 U.S.C. § 1631(a). Put plainly, the purpose of the TILA is to require creditors to divulge meaningful credit terms to consumers "and to protect the consumer against inaccurate and unfair credit billing and credit card practices." *McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578, 583 (E.D.N.Y. 2005).

While Plaintiffs mention the TILA twice in their Amended Complaint, they do not specify which provisions of the TILA Defendant allegedly violated. Without specific statutory provisions, the Court can only speculate as to the relevant factual allegations that correspond to Plaintiffs' TILA claims. For example, Plaintiffs allege that "Defendant has computed and imposed an internal alleged account balance on plaintiff in[]cluding principal balance, interest rates, fees and terms without proper consumer transparency of mode of accounting verification methods," which might be an attempt to invoke the TILA. (Dkt. 7, ¶ 16.) However, without more, Plaintiffs' TILA claims are insufficiently pled. *See Robinson v. Guzman o/b/o Victory Mitsubishi*, No. 23-CV-385 (LTS), 2023 WL 2393931, at *4 (S.D.N.Y. Mar. 6, 2023) (finding assertions that a defendant failed to provide plaintiff with "terms and definitions" related to a transaction, without additional factual context and explanation, were insufficient to state a claim under the TILA).

Therefore, the Court dismisses Plaintiffs' claim or claims under the TILA.

## II. Plaintiffs' FCRA Claims

Similar to their TILA claims, despite invoking § 1681s-2 of the FCRA, Plaintiffs fail to specify which portion of the statute they seek relief under. (Dkt. 7, ¶ 1.A.) Given the facts alleged in the Amended Complaint, the Court is unable to determine whether Plaintiffs are trying to invoke

7

one or both of the subsections of Section 1681s-2—Section 1681s-2(a) or Section 1681s-2(b). Regardless, Plaintiffs have not stated a claim under either subsection.

Section 1681s-2(a)(1) of the FCRA, entitled "Duty of furnishers of information to provide accurate information," states that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). However, there is no private right of action under Section 1681s-2(a). *See Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 304 (E.D.N.Y. 2014) (quoting *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); *see also Kane v. Guar. Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *4 (E.D.N.Y. May 16, 2005) ("[T]here is no private cause of action under Section 1681s-2(a), for the FCRA limits the enforcement of this subsection to government agencies and officials."). Thus, to the extent Plaintiffs allege violations of Section 1681s–2(a), they lack the authority to do so and such claims are dismissed.

Section 1681s-2(b)(1) of the FCRA, entitled "Duty of furnishers of information upon notice of dispute," provides, in relevant part, that "[a]fter receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall . . . conduct an investigation with respect to the disputed information[.]" 15 U.S.C. § 1681s-2(b)(1)(A). To state a claim under this subsection, a plaintiff must "show that the [defendant-]furnisher received information regarding a consumer's credit directly from a credit reporting agency, and not only from the consumer." *Nguyen*, 66 F. Supp. 3d at 305 (quoting *Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 344 (E.D.N.Y. 2012)). "Under § 1681s-2(b)[,] [a] defendant ha[s] no duty to investigate [a] credit dispute unless defendant received notice of the dispute from a consumer

8

reporting agency." *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172–74 (E.D.N.Y. 2012) (quotation omitted).

While Plaintiffs have provided their own November 9, 2018 letters to the credit reporting agencies, they have not shown that Defendant received information regarding Plaintiffs' credit directly from these agencies. Therefore, to the extent Plaintiffs allege violations of Section 1681s-2(b)(1), the Amended Complaint fails to state claims under this provision and such claims are dismissed.

Therefore, the Court dismisses Plaintiffs' FCRA claims.

### III.   Plaintiffs' FDCPA Claims

Finally, we come to Plaintiffs' FDCPA claims. The FDCPA "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection[.]" *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001); *see also* 15 U.S.C. § 1692(e) (noting that the purpose of the FDCPA is "to eliminate abusive debt collection practices"). Despite the fact that Defendant dedicates only three paragraphs of its motion to dismiss to these allegations, the Court addresses the merits of each FDCPA provision cited by Plaintiffs, construing Plaintiffs' allegations liberally in deference to their *pro se* status.

Here, Plaintiffs allege that Defendant violated 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g of the FDCPA. (Dkt. 7, ¶¶ 1B, 30.) Section 1692d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Section 1692e prohibits debt collectors from "us[ing] any false, deceptive, or misleading representation or means in connection with collection of any debt." 15 U.S.C. § 1692e. Section 1692f prohibits debt collectors from "us[ing] unfair or unconscionable means to collect or attempt to collect any debt."

15 U.S.C. § 1692f.  Section 1692g sets forth the process for a consumer to dispute a debt, and provides, *inter alia*, that if a consumer challenges a debt within 30 days of a debt collector first providing the notice set forth in Section 1692g(a), the debt collector must verify the debt or "cease collection of the debt."  15 U.S.C. § 1692g(b); *see also Agu v. Rhea*, No. 09-CV-4732 (JS) (AKT), 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010).

Plaintiffs' FDCPA claims under 15 U.S.C. §§ 1692d, 1692e, and 1692f fail to adequately plead sufficient facts to set forth a violation of those provisions and are therefore dismissed.  However, the Court finds that Plaintiffs have plausibly stated a claim under 15 U.S.C. § 1692g.

First, Plaintiffs do not provide any facts to support their asserted claims under 15 U.S.C. § 1692d because there is no allegation that Defendant harassed or oppressed Plaintiffs.  *See Herrera v. Navient Corps.*, No. 19-CV-6583 (AMD) (VMS), 2020 WL 3960507, at *4 (E.D.N.Y. July 13, 2020) (dismissing a *pro se* complaint alleging a violation of § 1692d of the FDCPA where the plaintiff did not specify how communications were harassing, oppressive or abusive).  The only relevant fact Plaintiffs allege is that Defendant "and subsidiary companies placed several automated calls from blocked numbers and in[]ternational phone numbers to Plaintiffs' cell phone[s], demanding payment for the alleged debt." (Dkt. 7, ¶ 30.)  Plaintiffs fail to specify how frequent these "several" calls were or allege any facts to demonstrate whether these calls were harassing, let alone that they are attributable to Defendant.  Absent further context, the Court will note that courts have set a high bar for when plaintiffs may impute an intention to harass to debt collector defendants.  *See, e.g.*, *Wilkins v. Specialized Loan Servicing, LLC*, 623 F. Supp. 3d 264, 275–76 (S.D.N.Y. 2022) (approximately 80 calls in roughly 33-month period did not allow inference that debt collector made calls with intention of harassing debtor); *but see Ghawi v. Law Offs. Howard Lee Schiff, P.C.*, No. 13-CV-115 (JBA), 2014 WL 6885141, at *2 (D. Conn. Dec. 1,

10

2014) (finding that plaintiff had pleaded sufficient factual content to allow the court to draw a reasonable inference that defendants were liable under § 1692d where plaintiff attached a list of 29 voicemails left by defendant in an 11-month period). Plaintiffs' allegations here fall far short of stating a claim of harassment by Defendant. Therefore, Plaintiffs' § 1692d claim is dismissed.

Second, Plaintiffs do not allege sufficient facts to support their § 1692e claim, involving the making of false, deceptive, or misleading representations. "In order to state a claim under section 1692e, the factual allegations relating to false or deceptive statements must be sufficient 'to raise a right to relief above the speculative level.'" *Cicalo v. Hunt Liebert Jacobson, P.C.*, No. 16-CV-399 (SRU), 2017 WL 101302, *6 (D. Conn. Jan. 10, 2017) (quoting *Twombly*, 550 U.S. at 555). Here, Plaintiffs fail to allege any facts supporting the claim that Defendant engaged in false, deceptive, or misleading representations in connection with collecting the debt apart from the allegation that Defendant generated and furnished "false unverified financial information to the [c]onsumer credit bureau(s)." (Dkt. 7, ¶ 13; *see also id.* ¶¶ 32–33.) Such a vague and conclusory assertion, lacking any specifics, is insufficient to state a claim under Section 1692e.

Third, while Plaintiffs similarly state in conclusory fashion that Defendant "use[d] unfair and unconscionable means to collect and report a debt" (Dkt. 7, ¶ 30), in connection with their Section 1692f claim, they again fail to allege any facts to support that assertion. Stating a conclusion in this context is not enough to make out a claim under Section 1692f. *See Adams v. Sheehan*, No. 13-CV-5401 (RRM) (JO), 2015 WL 58533, at *3 (E.D.N.Y. Jan. 5, 2015) (dismissing *pro se* plaintiff's FDCPA claims where she "simply lifted statutory language from the FDCPA, failing to include any facts or examples that would create a plausible basis for relief under the law."). "The Second Circuit has held that the term 'unfair or unconscionable means' refers to practices that are 'shockingly unjust or unfair, or affronting the sense of justice, decency, or

11

reasonableness.'" *Polak v. Kirschenbaum & Phillips, P.C.*, No. 17-CV-1795 (MKB) (PK), 2018 WL 1189337, at *5 (E.D.N.Y. Feb. 16, 2018) (quoting *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017)), *report and recommendation adopted*, 2018 WL 1187400 (E.D.N.Y. Mar. 6, 2018).  While Plaintiffs allege that Defendant and "subsidiary companies" made "several automated calls from blocked numbers and in[]ternational phone numbers to Plaintiffs' cell phone[s], demanding payment for the alleged debt" (Dkt. 7, ¶ 30), they do not allege any facts that Defendant exhibited shockingly unjust or unfair practices in connection with the collection of this debt.  Therefore, Plaintiffs do not state a claim under Section 1692e.

Lastly, Plaintiffs allege a violation of 15 U.S.C. § 1692g, which relates to the "validation of debts."  Under this section of the FDCPA, a debt collector is required, "within five days after the initial communication with a consumer" regarding the collection of a debt, to provide the consumer with a written notice containing, among other things, "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a)(3).  This statement is often referred to as a validation notice.  *See, e.g.*, *Ellis v. Solomon and Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010) ("Unless set forth in the debt collector's 'initial communication' with the consumer, the debt collector must send the consumer a written 'validation notice' within five days of the initial communication."); *Park v. Forster & Garbus, LLP*, 2019 WL 5895703, at *2 (E.D.N.Y. Nov. 12, 2019) ("Section 1692g of the FDCPA requires a debt collector to communicate certain information to a debtor when attempting to collect a debt ('validation notice').").  After receiving an initial communication with language related to the consumer's validation rights, or after receiving a standalone validation notice, a consumer may notify the debt collector within 30 days that the debt, or any portion thereof, is disputed.  *See* 15

U.S.C. § 1692g(b). Upon receiving notice of a dispute, the debt collector "shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . and a copy of such verification . . . is mailed to the consumer by the debt collector." *Id.* This must be done within 30 days of receiving the relevant communication from the debt collector. *See Williams v. Ocwen Loan Servicing*, LLC, No. 19-CV-2187 (KAM) (LB), 2020 WL 5757640, at *8 (E.D.N.Y. Sept. 27, 2020) (dismissing a *pro se* plaintiff's Section 1692g claim where plaintiff did not allege that she disputed the debt within the thirty-day window). "Application of both 1692g(a) and (b) depend on the existence of an 'initial communication' from the debt collector to the consumer." *Oliver v. U.S. Bancorp*, No. 14-CV-8948 (PKC), 2015 WL 4111908, at *4 (S.D.N.Y. July 8, 2015).

While the Court recognizes that Section 1692g is triggered by an initial communication from the debt collector, the Court finds it reasonable to infer that Defendant sent an initial communication (or validation notice) to Plaintiffs before Plaintiffs sent their October 10, 2018 letter to Defendant, and that, in fact, Plaintiffs were prompted to do so after receiving that initial communication from Defendant. As discussed, the current record reflects that on October 10, 2018, Plaintiffs sent a notarized letter titled "Validation of Debt / Claim" to Defendant—specifically invoking Section 1692g—and requested a validation of the debt noted on Plaintiff Abubakar O. Alausa's consumer credit profile. (Dkt. 14, at ECF 11 (Ex. B).) The plausible inference to be drawn from this allegation is that Plaintiffs specifically invoked Section 1692g in their October 10, 2018 letter because they received a validation notice from Defendant citing that provision. Furthermore, according to the Amended Complaint, Defendant confirmed receipt of Plaintiffs' validation request two days later and said it had "submitted a request to remove all derogatory marks against [Plaintiffs'] credit in [Defendant's] system." (Dkt. 7, at ECF 13 (Ex.

13

C).) This indicates that Defendant was on notice of the dispute and understood its obligation to promptly respond and to comply with the requirements of Section 1692g. Yet, Plaintiffs allege that Defendant "never indicated" it had "proof of [the] alleged debt" and "has not been able to provide proof of any such documents to show cause how [P]lainitiff[s] [are] responsible to pay [D]efendant the alleged collections account[.]" (Dkt. 14, at ECF 4–5.)

Despite correctly identifying the core issue in this case, Defendant fails to meaningfully address Plaintiffs' Section 1692g claim. (*See* Def.'s Reply, Dkt. 15-2, at 5 ("[T]he contents of the Opposition suggest that the crux of Plaintiffs' FDCPA invocation seems to relate to their request for validation of the subject debt account.").) Instead, Defendant simply argues first that Plaintiffs' pleadings are insufficient, and second—for the first time in its reply—that Plaintiffs' claims are time barred under the FDCPA's one-year statute of limitations. (*Id.* at 4–5.) The Court will not address Defendant's FDCPA statute of limitation defense presented solely in response to Plaintiffs' opposition and deems this argument waived. *See Marcoux v. Farm Serv. and Supply, Inc.*, 290 F. Supp. 2d 457, 484 n.28 (S.D.N.Y. 2003) ("[I]t is well settled that arguments may not be raised for the first time in a reply brief as that tactic denies the plaintiff the opportunity to respond."); *see also Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).[9] As to Defendant's

---

[9] Since the Court lacks sufficient information to determine whether Defendant complied with its § 1692g obligations, and because Defendant belatedly raised the statute of limitations defense, the Court deems this argument waived. *See Hines v. HSBC Bank USA*, No. 15-CV-3082 (CBA) (MDG), 2016 WL 5716749, at *8 (E.D.N.Y. Sept. 30, 2016) (denying a motion to dismiss an FDCPA claim as time-barred where the court was unable to determine whether the claim was untimely or whether any applicable tolling doctrines might preserve those claims); *see also Muia v. Brookview Rehab Funding, LLC*, No. 10-CV-1315 (LEK) (RFT), 2012 WL 1014753, at *3, n.4 (N.D.N.Y. Mar. 23, 2012) ("The statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c)(1), and Defendants did not raise it in their initial Motion to dismiss Plaintiff's original Complaint. Second Circuit case law has made clear that the statute of limitations is considered a defense that is generally waived if not raised 'at the earliest possible moment.'" (quoting *Santos v. Dist. Council of N.Y. City & Vicinity of United Bhd. of Carpenters & Joiners of Am., AFL-CIO*, 619 F.2d 963, 967 n.5 (2d Cir. 1980))).

insufficiency argument, the Court finds the alleged facts sufficient to state a claim under § 1692g of the FDCPA. *See Phillips v. Amana Collection Servs.*, Nos. 89-CV-1152S, 90-CV-149S, 1992 WL 227839 (W.D.N.Y. Aug. 25, 1992) (denying a debt collection agency's motion to dismiss, *inter alia*, a Section 1692g claim, where defendant relied "solely on plaintiffs' failure to produce any tangible evidence"—namely, the letters and notices which constituted the alleged FDCPA violation—in support of its motion).

Therefore, because Plaintiffs have sufficiently alleged facts that could establish Defendant's violation of § 1692g of the FDCPA, this claim survives Defendant's motion to dismiss.[10]

## CONCLUSION

For the stated reasons, Defendant's motion to dismiss is granted as to Plaintiffs' TILA claims, FCRA claims, and FDCPA claims brought under 15 U.S.C. §§ 1692d, 1692e, and 1692f. The Court denies Defendant's motion to dismiss as to Plaintiffs' claim brought under 15 U.S.C. § 1692g.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 19, 2023
       Brooklyn, New York

---

[10] In discovery, the core factual issues will be whether Defendant complied with its statutory obligation to send an initial communication (i.e., validation notice) to Plaintiffs, which the Court infers that it did; whether Plaintiffs' October 10, 2018, letter came within the 30-day window as required by the statute; and whether Defendant complied with its statutory obligation to investigate the validity of the debt and inform Plaintiffs of the results of any investigation.